IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALDRED BLAKE NEAL,

        Plaintiff,

v.                                  Case No. 11-3155-JTM

DAVID R. MCKUNE, et al.,

        Defendants.

MEMORANDUM AND ORDER

The court has before it a Motion to Dismiss (Dkt. 32) by defendants David R. McKune, Don Almond, Colette Winkelbauer, Rex Pryor, Elizabeth L. Rice, and Roy Roberts. After reviewing the parties' arguments, the court grants the Motion.

**I. Background**

The relevant facts are uncontested. Plaintiff Aldred Blake Neal, is a Muslim prisoner who was, at all times relevant, an inmate in the custody of the Kansas Department of Corrections, incarcerated at the Lansing Correctional Facility. Neal filed his complaint under 42 U.S.C. § 1983, alleging violations of his rights under the First, Fifth, and Eighth Amendments to the U.S. Constitution.[1] In Counts One and Two, Neal claims that the defendants violated his rights under the First and Fifth Amendments when they failed to properly accommodate his religious fasts during the months of

---

[1] Neal listed the Religious Land Use & Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et. seq.* as a basis for jurisdiction in his Complaint. However, Neal does not actually allege any violations of this act. Even were the court to consider a claim under RLUIPA on the facts pled by Neal, it would find that there was no substantial burden to his religious practices. *See infra* Section III.B.1.

Ramadan in 2009 and 2010 by not allowing him adequate time for breakfast before dawn (when Neal's fast must begin, according to his Muslim faith).

Count One pertains to events occurring during Ramadan in 2009. On August 22, 2009, Neal was served breakfast at 5:13 a.m., only seven minutes before dawn at 5:20 a.m., the time at which Ramadan fast began that day, giving Neal less than the standard twenty minutes to eat that inmates are supposed to receive. On August 23, Neal received his breakfast at 5:26 a.m. five minutes after dawn broke at 5:21 a.m., forcing him to decide whether to forgo eating until night or break his fast for the day. Neal filed a grievance on August 24. Defendant Winkelbauer, a deputy warden, responded that "Sunrise in Lansing, Kansas on 8/23/09 was 0640 hours so there was time to eat prior to sunrise that day." Based on this, Winkelbauer stated that no further action was necessary. On Neal's appeal, Defendant Rice, the Secretary of Corrections's designee, concluded that Winkelbauer's response was appropriate.

Count Two pertains to events occurring during Ramadan in 2010. On August 11 and 14, 2010, Neal did not receive his breakfast until after dawn. On August 12, 13, 17, 18, and 19, Neal received his breakfast less than ten minutes before dawn. On August 19, Neal filed a grievance notifying prison officials of his late meals. On September 30, Neal received Winkelbauer's response, which stated that Aramark—the food company with which the prison contracts for prisoners' meals—"should have been more diligent on those days it was excessively late. This issue has been addressed with Aramark staff and if corrective action is needed with regard to this issue, action will be taken accordingly . . . ." Winkelbauer also noted that one of the late meals was caused by a

power problem in the kitchen. After Neal forwarded his grievance to defendant McKune, the warden of Lansing Correctional Facility, McKune sent him a letter apologizing for the tardiness of the meals and acknowledging that "Aramark should have been more mindful and diligent."

In Count Three, Neal claims defendants violated his rights under the Eighth Amendment when he was placed on the religious diet and served a piece of chicken on two occasions during Ramadan in 2009. Since 2001, Neal had been on an approved vegetarian diet. After submitting a Religious Accommodation Request for Ramadan, Neal was placed on the Religious Diet Menu For Use During Ramadan, along with all of the other inmates participating in Ramadan. Neal asserts that Winkelbauer gave Aramark's manager the instruction to serve the Ramadan participants the religious diet. Over the month-long period, Neal was served a chicken entrée twice. After Neal filed a grievance, deputy warden Winkelbauer responded that "Aramark was using the Department of Corrections Ramadan approved religious diet," and that a vegetarian entrée was available to be substituted for the chicken had Neal requested it. Winkelbauer also explained the differences between the general Religious Diet Menu and the Religious Diet Menu For Use During Ramadan, stating that "the calorie count has been adjusted by the dietician to account for not having lunch." After Neal appealed this response, McKune responded that Winkelbauer's input was appropriate and correct and no further action was necessary.

Based on his claims, Neal requests injunctive relief to stop all parties from violating his religious tenets. He seeks $250,000.00 in punitive damages from the

defendants. Finally, Neal requests that $100,000.00 be placed in a trust outside the control of the Kansas Department of Corrections for books, religious materials, and an education scholarship fund.

In their motion, the defendants argue that (1) the Eleventh Amendment's doctrine of sovereign immunity bars the claims against them in their official capacities, (2) qualified immunity bars the claims against them in their personal capacities, and (3) the Complaint should be dismissed for failure to state a claim.

**II. Sovereign Immunity for Defendants in Their Official Capacities**

Defendants argue that Neal's § 1983 claims for money damages against the state defendants in their official capacities are barred by the Eleventh Amendment doctrine of sovereign immunity. Under the Eleventh Amendment, a state is generally immune in law or in equity for damages or any other relief in any action brought by any citizen. U.S. CONST. amend. XI; *see also Lee v. McManus*, 589 F. Supp. 633, 637 (D. Kan. 1984) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)). Furthermore, "civil rights suits against the state of Kansas or one of its agencies are absolutely barred by the Eleventh Amendment." *Lee*, 589 F. Supp. at 637; *see also Brennan v. University of Kansas*, 451 F.2d 1287 (10th Cir. 1971)). However, suits seeking declaratory or injunctive relief against state officials are not barred. *Id.* at 637–38 (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)).

Neal seeks both monetary and prospective injunctive relief. Under the Eleventh Amendment's sovereign immunity doctrine, this court has no subject matter

jurisdiction over the claims for monetary damages against state officials in their official capacities. Therefore, these claims are dismissed.

However, sovereign immunity does not rob the court of subject matter jurisdiction to the extent that Neal seeks injunctive relief. *See Ex Parte Young*, 209 U.S. at 159–60. Regardless, as the court explains below, Neal fails to state a constitutional claim.[2] Therefore, the court dismisses Neal's claims for injunctive relief as well.

**III. Claims Against Defendants in Their Individual Capacities**

*A. Legal Standard*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008).

---

[2]*See* Section III.B.

In ruling on a motion to dismiss for failure to state a claim, the Court assumes as true all well pleaded facts in the complaint and views them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The court, however, need not accept as true those allegations which state only legal conclusions. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Although a plaintiff need not precisely state each element of its claims, it must plead minimal factual allegations on those material elements that must be proved. *Id.* "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal citations and quotations omitted).

Because Neal is pursuing this action pro se, the court must be mindful of additional considerations. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citation omitted). "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." It is the Plaintiff's burden to allege that there are, "enough facts to state a claim to relief that is plausible on its face." *Bafford v. Pokorski*, 2008 WL 2783132, at *1 (D. Kan. July 17, 2008) (citing *Twombly*, 550 U.S. 570 (1974)).

*B. Analysis*

Defendants advance two arguments to dismiss Neal's claims against them in their individual capacities. First, they claim qualified immunity shields them from Neal's claims. Second, the defendants argue that Neal has not pled facts that show their personal participation in the alleged constitutional violations. The court resolves the matter on the former argument, therefore it does not address the latter.

Qualified immunity exists "to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of effective government." *Robbins*, 513 F.3d at 1248–49 (internal quotation marks and citations omitted). Government officials enjoy the protections of the qualified immunity doctrine from liability for damages if their actions do not violate a clearly established statutory or constitutional right. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of establishing that the defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). The plaintiff must also show that the constitutional right was clearly established. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1204 (10th Cir. 2008). This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id.* (internal citation omitted). Qualified immunity provides "ample room for mistaken judgments" and

protects all government officials except "the plainly incompetent or those who knowingly violate the law." *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009).

To "nudge their claims across the line from conceivable to plausible" in [the qualified immunity] context, plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time. *Id.* at 1249 (quoting *Twombly*, 550 U.S. at 570). If the plaintiff fails to satisfy either part of this inquiry, the court must grant the defendant qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001).

The court addresses Neal's claims in the context of each right that Neal alleges the defendants violated.

### First Amendment

The defendants are all state actors whose actions are not technically restricted by the First Amendment. However, the court construes Neal's suit as alleging violations of the Fourteenth Amendment, which incorporates the First Amendment's protections and applies them to the states. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Although incarcerated, prisoners still have the right to "reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment." *Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205, 1209 (10th Cir. 1999) (citations omitted).

In order to state a free exercise claim, a prisoner-plaintiff "must first show that a prison regulation substantially burdened . . . sincerely-held religious beliefs." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir.2007) (internal quotations omitted). A prison

8

regulation substantially burdens a religious belief if it: (1) significantly inhibits or constrains plaintiff's religious conduct or expression, (2) meaningfully curtails plaintiff's ability to express adherence to his faith, or (3) denies plaintiff reasonable opportunity to engage in fundamental religious activities. *Wares v. Simmons*, 524 F. Supp. 2d 1313, 1320 (D. Kan. 2007). However, "the incidental effects of otherwise lawful government programs which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs do not constitute substantial burdens on the exercise of religion." *Thiry v. Carlson*, 78 F.3d 1491, 1495 (10th Cir. 1996) (internal quotation omitted). Additionally, isolated acts of negligence do not violate an inmate's First Amendment right to free exercise of religion. *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009).

Furthermore, a plaintiff must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983. *See id.* (internal quotation omitted). Prison regulations that would raise grave First Amendment concerns outside the prison context are valid if they are reasonably related to legitimate penological interests. *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (citing *Turner v. Safley*, 482 U.S. 78 (1987)). Therefore, in order for a plaintiff to state an adequate claim, he or she "must include sufficient facts to indicate the plausibility that the actions of which he complains were not reasonably related to legitimate penological interest." *Id*. at 1188. In the present case, Neal fails to do so.

In Counts One and Two, Neal alleges that in 2009 and 2010, prison officials failed to serve him with enough time remaining to eat his breakfast before dawn. But Neal

9

does not allege that prison's policy was to serve him late or infringe on his right to fast during Ramadan. Rather, the prison policy was to accommodate Ramadan observers in 2009 and 2010 by allowing the inmates to eat meals before dawn and after sunset.

Neal alleges that the prison's policy of calling inmates for breakfast at 5:00 a.m. in 2009 led to his right to fast being violated twice. The crux of Neal's claims is that the prison should have either set an earlier time for eating or set a fluctuating breakfast time since the time of dawn got later by the day in Ramadan of 2009. Because the fast on the first day of Ramadan in 2009 started at 5:20, a better policy might have set the breakfast time at 4:30 or 4:45 to give the inmates more time to eat and allow for predictable tardiness caused by the food contractor or other factors. Regardless of what the best policy might have been, the prison's policy in this case was to try to accommodate Neal's fasting; it was not intended to restrict his religious freedom, and Neal does not allege this. The same analysis applies to count two of Neal's complaint regarding Ramadan in 2010.

The harms alleged by Neal do not amount to a substantial burden on his religious freedom. The meals were not served late deliberately. Rather, as explained by deputy warden Winkelbauer's response to Neal's grievance in 2010, Aramark, the food contractor, had been late getting set up to serve breakfast on occasion, and once, the electrical power in the kitchen created a problem. Neal did not even let prison officials know about the several late meals in 2010 until Ramadan was completed, giving them no chance to remedy the situation. Although the implementation of the policy appears to have failed on occasion, the policy itself created, at worst, a mere inconvenience to

Neal's religious practices by making him eat quickly before his fast began. *See Strope v. Cummings*, 381. Fed. Appx. 878, 882 (10th Cir. 2010).

The isolated incidents of forfeited meals caused by negligence of the food staff were merely the incidental effects of an otherwise lawful government program. *See Gallagher*, 587 F.3d at 1070. The incidental effects of implementing the policy, rather than the policy itself, made Neal's fasting more difficult. *See Thiry*, 78 F.3d at 1495. The prison policy of feeding the inmates at a time in the morning set twenty minutes before dawn (as it was in 2009 and 2010) does not significantly inhibit or constraint Neal's religious conduct or expression, meaningfully curtail his ability to express adherence to his faith, or deny him a reasonable opportunity to engage in fundamental religious activities. *See Wares*, 524 F. Supp. 2d at 1320.

Essentially Neal claims that he missed three meals and was hurried during six others over the course of two Ramadan months in 2009 and 2010. Although enduring extended periods of time without any acceptable meals may, at some point, rise to the level of a substantial burden on an inmate's religious beliefs, this is not the case here. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010). Even on the days he was served too late to eat breakfast before dawn, Neal was able to pick up a religiously acceptable evening meal after the fast had ended. Additionally, Neal does not allege that the defendants engaged in conscious and intentional interference with his fasting. *See Gallagher*, 587 F.3d at 1070.

Although missing three breakfasts during two Ramadan months is an inconvenience, the absence of intentional withholding of food and the availability of a

religiously acceptable dinner prevented any substantial burden to Neal's fasting. The court finds that these incidents do not amount to a substantial burden on Neal's religious freedom under the First Amendment. Therefore, the defendants are entitled to qualified immunity on Counts One and Two, and Neal fails to state a claim under FED. R. CIV. P. 12(b)(6).

Fifth Amendment

Neal claims his rights to equal protection under the Fifth Amendment were also violated on the occasions that he was not given the same amount of time to eat as other inmates not observing Ramadan. Once again, the court construes these claims as equal protection claims under the Fourteenth Amendment because the defendants are state actors rather than federal agents.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. The Equal Protection Clause keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). In order to successfully state an equal protection claim, "a plaintiff first must demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir.2001).

Neal's equal protection claim fails because he does not allege that the disparate treatment he received was a result of purposeful discrimination. *Elliot v. Cummings*, 49 Fed. Appx. 220, 226 (10th Cir. 2002) (stating that discriminatory intent or purpose must be a motivating factor in a decision). As in the court's First Amendment analysis, the prison's breakfast time policy was in place to accommodate, not to frustrate, Neal's religious expression. Additionally, Neal cannot show that he was similarly situated to those not observing Ramadan. *See Couch v. Jabe*, 479 F. Supp. 2d 569, 590–91 (W.D. Va., Sept. 22, 2006). Neal was part of the group of prisoners who voluntarily chose to stop eating food at dawn each morning. Neal specifically requested a different type of treatment for his religious observance. Had the prison treated Neal the same as the rest of the prison population, he would not have been served breakfast until after dawn during the entire month of Ramadan.

The prison policy treated the Ramadan observers differently from the general inmate population in order to enable their religious observances. Because Neal cannot allege that he was treated differently from others similarly situated, or that the unequal treatment was the result of intentional or purposeful discrimination, the court finds that he has failed to state an equal protection claim. In the absence of a constitutional violation, the defendants are entitled to qualified immunity on counts one and two. Accordingly, the court dismisses Neal's Fifth Amendment claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Eighth Amendment

Count three of Neal's complaint alleges that his Eighth Amendment rights were violated when he was taken off of the vegetarian diet and placed on the Ramadan diet. As a basis for his claim of cruel and unusual punishment, Neal claims that he was served a chicken entrée twice during Ramadan of 2009, a meal he could not eat because it is considered haraam (sinful) in the Muslim faith unless the chicken is prepared in accordance with Islamic law. Neal also claims that the diet change resulted in a change of caloric intake in violation of the Eighth Amendment.

The Eighth Amendment prohibits cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 318 (1986). In order to constitute cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests. *Id*. at 319. Obduracy and wantonness rather than inadvertence or error in good faith characterize the conduct prohibited by the Eighth Amendment. *Id*.

"A State must provide inmates with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Strope v. Sebelius*, 189 Fed. Appx. 763, 765 (10th Cir. 2006) (quotations omitted). In order to state a valid claim for food deprivation, "a prisoner must allege both (1) a sufficiently serious deprivation of the minimal civilized measure of life's necessities and (2) deliberate indifference by prison officials to a substantial risk of serious harm to an inmate." *Id*. at 766. The denial of a requested diet is insufficient to establish a cognizable Eighth Amendment claim when

nutritiously adequate food is available. *LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991).

Neal's allegations do not state a claim for relief under the Eighth Amendment. First, no sufficiently serious deprivation occurred. Neal attaches to his complaint an explanation from Winkelbauer in response to Neal's prison grievance, which states that Neal could have asked to switch out his chicken entrée for a vegetarian one on both occasions. Neal does not state in his complaint whether he consumed the chicken or skipped the meal entirely, but even assuming the latter, this was not a necessary consequence. Regardless, two isolated incidents of missing out on a meal do not qualify as "cruel and unusual punishment." According to Neal's own complaint, nutritious food was available, so the denial of his requested diet is insufficient to establish an Eighth Amendment claim. *See LaFevers*, 936 F.2d at 1120.

Further, Neal fails to plead that any substantial risk of serious harm existed. He claims that the caloric intake was altered for the prisoners assigned to the Ramadan diet plan. But Neal does not allege that the altered caloric intake was insufficient to the point of posing a serious risk to the prisoners' health. Without facts showing this risk existed, Neal cannot claim that prison officials were deliberately indifferent to such a risk. *See Strope v. Sebelius*, 189 Fed. Appx. at 766. Neal's allegations fail to sufficiently state a claim under either prong of the required standard for an Eighth Amendment violation. In the absence of a constitutional violation having occurred, the defendants are entitled to qualified immunity on count three, and Neal fails to state a claim under FED. R. CIV. P. 12(b)(6).

**IV. Conclusion**

Neal's claims against the defendants in their official capacities are barred by sovereign immunity to the extent Neal seeks monetary damages. As for Neal's claims against the defendants in their individual capacities, the court finds the allegations insufficient to show that the defendants plausibly violated his constitutional rights. Therefore the defendants are entitled to qualified immunity, and the court dismisses the claims against the defendants in their individual capacities. For failing to state a violation of his constitutional rights, the court also dismisses Neal's claims for injunctive relief against the defendants in their official capacities.

Additionally, the court notes that defendants Thomas Wedl and Jane Doe have not yet been served. Neal's claims against these defendants were the same as his claims against the other defendants. Having dismissed these claims against the defendants who have been served, the court finds that no purpose would be served in allowing these claims to proceed against the defendants who have yet to be served. Neal's claims against Thomas Wedl and Jane Doe are therefore dismissed for the same reasons set forth above.

IT IS THEREFORE ORDERED this 9th day of April, 2013, that defendants' Motion to Dismiss (Dkt. 32) is granted. Although defendants Thomas Wedl and Jane Doe were not parties to the Motion to Dismiss, Neal's claims against them are also dismissed.

                                              s/J. Thomas Marten
                                              J. THOMAS MARTEN, JUDGE